UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA             :
and STATE OF NEW JERSEY,             :
                                     :
              Plaintiffs,            :
                                     :        Civil No. _____
       v.                            :
                                     :
CORNELL DUBILIER ELECTRONICS, INC.,  :
                                     :
                                     :
              Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**CONSENT DECREE**

TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 3
II.     JURISDICTION ................................................................................................ 4
III.    PARTIES BOUND ............................................................................................ 4
IV.     DEFINITIONS.................................................................................................... 4
V.      STATEMENT OF PURPOSE .......................................................................... 8
VI.     PAYMENTS ...................................................................................................... 8
VII.    FAILURE TO COMPLY WITH CONSENT DECREE ................................. 13
VIII.   COVENANTS BY PLAINTIFFS.................................................................... 15
IX.     RESERVATION OF RIGHTS BY PLAINTIFFS ......................................... 15
X.      COVENANTS BY SETTLING DEFENDANT............................................... 16
XI.     EFFECT OF SETTLEMENT/CONTRIBUTION ........................................... 17
XII.    RETENTION OF RECORDS........................................................................... 19
XIII.   NOTICES AND SUBMISSIONS.................................................................... 20
XIV.    RETENTION OF JURISDICTION.................................................................. 22
XV.     INTEGRATION/APPENDICES ...................................................................... 22
XVI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................... 22
XVII.   CONDITIONAL CONSENT OF THE PARTIES ........................................... 23
XVIII.  SIGNATORIES/SERVICE............................................................................. 23
XIX.    FINAL JUDGMENT ....................................................................................... 23

# I.   BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the U.S. Environmental Protection Agency ("EPA"), and the Secretary of the Department of the Interior, filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607 ("CERCLA"), as amended, seeking Natural Resource Damages and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Woodbrook Road Dump Site in South Plainfield, Middlesex County, New Jersey (the "Site").

B.      In the same complaint, the State of New Jersey (the "State"), on behalf of the Administrator of the New Jersey Spill Compensation Fund, also alleged that the defendant is liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, with respect to the Site. The State seeks Natural Resource Damages and reimbursement of response costs incurred and to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site.

C.      In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and EPA and the State will undertake additional response actions in the future.

D.      In performing response actions at the Site, EPA and the State have incurred response costs and will incur additional response costs in the future.

E.      The United States and the State allege that the defendant that has entered into this Consent Decree ("Settling Defendant") is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and as to the State, the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, and is jointly and severally liable for response costs incurred and to be incurred at the Site.

F.      The Settling Defendant does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

G.      The United States and the State have reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site and Natural Resource Damages.  Based upon this Financial Information and Insurance Information, the United States and the State have determined that Settling Defendant has limited financial ability to pay for response costs incurred and to be incurred at the Site and Natural Resource Damages.

3

H.     At substantially the same time that this Consent Decree was lodged with the Court, a separate supplemental consent decree was lodged in the United States District Court for the District of Massachusetts in *United States and Commonwealth of Massachusetts v. AVX Corporation, et al.*, Case Nos. 83-3882-Y and 83-3889-Y (D. Mass.) (Young, J.) related to the New Bedford Harbor Superfund Site in New Bedford, Massachusetts ("New Bedford Harbor Decree"). This Consent Decree and the New Bedford Harbor Decree were negotiated as parts of a single ability-to-pay settlement. As a result, the effectiveness of this Decree is contingent upon the approval and entry of the New Bedford Harbor Decree and the effectiveness of the New Bedford Harbor Decree is contingent upon the approval and entry of this Decree. If either the New Bedford Harbor Decree or this Consent Decree is not approved or entered by a Court, this Consent Decree shall be null and void and of no further effect.

I.     The United States, the State, and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II.     JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345 and 42 U.S.C. §§ 9607 and 9613(b), has pendant jurisdiction over the claims arising under State law, and also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.     PARTIES BOUND

2.     This Consent Decree is binding upon the United States and the State, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV.     DEFINITIONS

3.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms

listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"CDE" shall mean Cornell Dubilier Electronics, Inc.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675, as amended.

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOI" shall mean the United States Department of the Interior and its successor departments, agencies, or instrumentalities.

"DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the latest date on which this Consent Decree and the New Bedford Harbor Decree have each been approved by this Court and the United States District Court for the District of Massachusetts, respectively.

"EPA" shall mean the U.S. Environmental Protection Agency.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Financial Information" shall mean those financial documents identified in Appendix B.

"Insurance Information" shall mean those insurance documents identified in Appendix C.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

5

"Natural Resource Damages" shall mean:

(a)     Damages recoverable pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, for injury to, destruction of, or loss of natural resources at the Site including, but not limited to, costs of assessment and costs of restoring, replacing or acquiring the equivalent of injured or lost natural resources; and

(b)     As regards the State, "Natural Resources," as used in this Consent Decree, includes all land, fish, shellfish, wildlife, biota, air, waters and other such resources owned, managed, held in trust or otherwise controlled by the State.

"Natural Resource Damages" shall mean all claims arising from discharges at the Site that occurred prior to the Effective Date of this Consent Decree, and that are recoverable by NJDEP as natural resource damages for injuries to Natural Resources under the Spill Compensation and Control Act, N.J.S.A. 58:10 23.11 et seq., the Water Pollution Control Act, N.J.S.A. 58:10A-1 through -20; the Oil Pollution Act, 33 U.S.C.A. §§ 2701 through -2761; the Clean Water Act, 33 U.S.C.A. §§ 1251 through -1387; CERCLA; the Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.S.A.13:1E-100 et seq., or any other state or federal common law, statute, or regulation, and include:

(i)     The costs of assessing injury to Natural Resources, NJDEP Office of Natural Resource Restoration's costs and fees, including costs and fees incurred to determine that CDE has complied with the requirements of this Consent Decree (oversight costs), attorney's fees, consultants and experts' fees, other litigation costs, incurred prior to the Effective Date of this Consent Decree; and

(ii)    Compensation for the lost value of, injury to, or destruction of Natural Resources.

But as regards the State shall not include compliance with any statutory or regulatory requirement that is not within the definition of Natural Resource Damages.

"New Bedford Harbor Decree" shall mean that Supplemental Consent Decree lodged in *United States and Commonwealth of Massachusetts v. AVX Corporation, et al.*, Case Nos. 83-3882-Y and 83-3889-Y (D. Mass.) (Young, J.) memorializing a settlement between the

6

United States, the Commonwealth of Massachusetts, and CDE relating to the New Bedford Harbor Superfund Site, and lodged with the court in the District of Massachusetts substantially simultaneously with this Decree.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the State of New Jersey, and the Settling Defendant.

"Plaintiffs" shall mean the United States and the State.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Cornell Dubilier Electronics, Inc. ("CDE").

"Site" shall mean the Woodbrook Road Dump Superfund Site, encompassing approximately 70 acres, located on Woodbrook Road in South Plainfield, Middlesex County, New Jersey and generally shown on the map that is Appendix A.

"State" shall mean the New Jersey Department of Environmental Protection ("NJDEP") and the Administrator of the New Jersey Spill Compensation Fund.

"State Response Costs" shall mean all costs incurred and to be incurred, including cleanup and removal costs, by the State or its departments or their agents or any person with written approval from the State, at or in connection with the Site and in the (i) removal or attempted removal of hazardous substances, or (ii) taking of reasonable measures to prevent or mitigate damage to the public health, safety or welfare, including but not limited to public or private property, including wildlife and other natural resources, and shall include costs incurred by the State for the indemnification and legal defense of contractors pursuant to Sections 1 through 11 of P.L. 1991, c. 373 (G58:10-23.1 lf(8) through 58:10-23.1 lf(19)), pursuant to N.J.S.A. 58:10-23.1 lb.  State Response Costs shall not include amounts reimbursed to the State by EPA.

"Trustees" shall mean the trustees for natural resources at the Site including DOI and the New Jersey Department of Environmental Protection.

7

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the federal Trustee.

"Woodbrook Road Dump Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

## V.    STATEMENT OF PURPOSE

4.      By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendant to make a cash payment to resolve its alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, as provided in the Covenants by Plaintiffs in Section VIII, and subject to the Reservations of Rights by Plaintiffs in Section IX.

## VI.    PAYMENTS

5.    **Payments to the United States**

a.      Settling Defendant shall pay to EPA the principal amount of $3,361,500. Such payment is due within 30 days after the Effective Date and shall include Interest calculated from the date of lodging and continuing through the date of payment. Settling Defendant will contact DOJ at least 14 days before payment is due to identify the date on which Settling Defendant intends to make payment.  The Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the District of New Jersey shall send shortly thereafter payment instructions for the principal payment due, plus the applicable Interest calculated using the payment date provided by Settling Defendant.

b.      Settling Defendant shall pay to the Trustees within 30 days after the Effective Date the principal amount of $265,000 for Natural Resource Damages at the Site, plus Interest calculated from the date of lodging and continuing through the date of payment, to be deposited in the Natural Resource Damage Assessment and Restoration Fund, said amount to be subject to disbursement only on the joint request of the Trustees.  Settling Defendant will contact DOJ at least 14 days before payment is due to identify the date on which Settling Defendant intends to make payment.  DOI shall send shortly thereafter payment instructions to Settling Defendant for the principal payment due, plus the applicable Interest calculated using the payment date provided by the Settling Defendant.

6.    **Insurance Proceeds Escrow Account.**  Within 10 days of (a) a voluntary dissolution of the corporate entity that is CDE or (b) voluntary closure of the Proceeds Escrow Account established by the Consent Decree entered by the United States District Court for the District of New Jersey on August 28, 2012, in *United States v. Cornell Dubilier Electronics, Inc.*, Case No. 2:12-cv-05407-JLL-MAH ("Escrow Account"), CDE shall provide notice to Plaintiffs

of such event.  Within 30 days of provision of payment instructions to CDE, CDE shall pay to Plaintiffs any remaining proceeds in the Escrow Account.  Payments from the Escrow Account shall be split evenly between the Woodbrook Road Site, on the one hand, and the New Bedford Harbor Site, on the other hand.  For payments for the Woodbrook Road Site, CDE shall pay EPA, the Trustees, and the State any remaining proceeds in the Escrow Account in accordance with the proportionate payment shares reflected in Paragraphs 5 and 10.   Nothing in this Paragraph shall be read to interfere with CDE's retention of the right to dissolve the corporation in its discretion.  Payments to the State from such dissolution or closure shall be paid in accordance with Paragraph 11.

       7.     a.    With the exception of those payments to be made under Paragraph 5.b. above, Settling Defendant shall make payments to the United States at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of New Jersey after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, Site/Spill ID Number 02NX, and DJ Number 90-11-3-11024, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Victor Whitworth
> Cornell-Dubilier Electronics, Inc.
> 140 Technology Place
> Liberty, SC 29657
> vwhitworth@cde.com
> 864-843-2626
>
> With a copy to:
>
> Jonathan M. Ettinger, Esq.
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> jettinger@foleyhoag.com
> 617-832-1195

on behalf of Settling Defendant.  Settling Defendant may change the individual to receive payment instructions on its behalf by providing written notice to DOJ and EPA of such change in accordance with Section XIII (Notices and Submissions).

       b.    Payments made pursuant to Paragraph 5.b. shall be deposited in the Natural Resource Damage Assessment and Restoration Fund via an Electronic Funds Transfer ("EFT") through the U.S. Treasury's Automated Clearing House (ACH)/Remittance Express

program in accordance with instructions to be provided by DOI.  Payment shall be deemed to
have been made upon receipt of these funds by EFT.  At the time of any distribution pursuant to
this Consent Decree, Settling Defendant shall transmit written confirmation of such distribution
(with email being an acceptable form of electronic written confirmation provided that each of the
email addresses listed below is copied), including a copy of the paperwork documenting the EFT
and any accompanying correspondence, to the following persons:

>Natural Resource Damage Assessment and Restoration Program
>Attn: Restoration Fund Manager
>Mail Stop 4449
>1849 C Street, N.W.
>Washington, D.C. 20240
>Bruce_A_Nesslage@ios.doi.gov
>
>Mark Barash, Esq.
>Senior Attorney
>Office of the Solicitor of the United States Department of the
>Interior
>15 State St., 8th Floor
>Boston, MA 02109-3502
>mark.barash@sol.doi.gov
>
>Gary Wolf, Section Chief
>Environmental Enforcement and Environmental Justice Section
>Division of Law
>25 Market Street
>Trenton, NJ 08625
>gary.wolf@law.njoag.gov

Notices shall reference the DOJ Case Number (90-11-3-11024), the case caption, and the
name of Settling Defendant.  Notice to the State of New Jersey shall reference DOL Case
Number 15-62094, and the name of the Settling Defendant.

8.     **Deposit of Payment**. The total amount of each payment to EPA to be made
pursuant to Paragraph 5.a. and Paragraph 6, if any, shall be deposited by EPA in the Woodbrook
Road Dump Site Special Account to be retained and used to conduct or finance response actions
at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance
Superfund.

9.     **Notice of Payment**. At the time of each payment to EPA, Settling Defendant
shall send notice that payment has been made (a) to EPA in accordance with Section XIII

(Notices and Submissions), (b) to DOJ in accordance with Section XIII; and (c) to the EPA Cincinnati Finance Center ("CFC") at:

EPA CFC by email:         cinwd_acctsreceivable@epa.gov
EPA CFC by regular mail:  EPA Cincinnati Finance Center
                          26 W. Martin Luther King Drive
                          MS: WG32B
                          Cincinnati, Ohio 45268

Such notice shall reference the CDCS Number, Site/Spill ID Number 02NX, and DJ Number 90-11-3-11024.

10.    **Payments to New Jersey.**   In addition to the payment made pursuant to Paragraph 5.b., Settling Defendant shall pay to the State of New Jersey the principal amount of $373,500 in reimbursement of response costs incurred and to be incurred at the Site.  Payment of the principal amount shall be made within 30 days after the Effective Date and shall include Interest calculated from the date of lodging and continuing through the date of payment.  Interest shall be calculated according to R. 4:442 of the New Jersey Rules of Court.

11.    Unless otherwise agreed upon by the Parties, payments to be made to the State under this Consent Decree shall be made by electronic funds transfer in accordance with instructions to be provided by the State and using the following information:

Receiving Bank:                 Wells Fargo
Bank ABA Number:                121000248
Account Number for Deposit:      21-00007132552
Account Name:                   N.J. Hazardous Discharge Site Cleanup Fund
Fund Number:                    E8-531

Upon completion of the transfer, the payor shall email a copy of the payment information to (a) Section Chief, Gary Wolf, Environmental Enforcement and Environmental Justice Section, N.J. Division of Law, email: gary.wolf@law.njoag.gov, phone: (609) 984-9315; and (b) Administrator, David Haymes, New Jersey Spill Compensation Fund, email, david.haymes@dep.nj.gov; phone: (609) 984-2902.  This copy shall reference *State of New Jersey v. Cornell Dubilier Electronics Inc.* (Woodbrook Road) in the copy of payment information as well as the subject line of the email copy.  Any payment received after 4:00 p.m. Eastern Time shall be credited on the next business day.

12.    **Letters of Credit.**

a.    Woodbrook Letters of Credit;.  No later than 30 days following the date as of which both this Consent Decree and the New Bedford Harbor Decree have been lodged with the relevant court, CDE shall cause to be issued for the benefit of the United States and the State,

respectively, letters of credit (the "Woodbrook Letters of Credit") that shall (1) each have a stated amount, and provide for drawings thereunder in an aggregate amount, of $3,626,500 to the United States and $373,500 to the State, respectively.

      b.    <u>Maintenance of Letters of Credit</u>. CDE shall cause each of the Woodbrook Letters of Credit and the letters of credit required by the New Bedford Harbor Decree (the "New Bedford Harbor Letters of Credit") (collectively, the "Letters of Credit") to be maintained until (i) in the case of each Woodbrook Letter of Credit, the date when all of CDE's payment obligations under Paragraph 5 and Paragraph 10 hereof that are secured thereby have been fulfilled and (ii) in the case of the New Bedford Harbor Letters of Credit, the date when all of CDE's payment obligations under the New Bedford Harbor Decree that are secured thereby have been fulfilled; provided, however, that CDE shall no longer be required to maintain any of the Letters of Credit after the date when either consent decree is ruled upon and not approved by the relevant court. When CDE has made all such payments under this consent decree secured by the relevant Woodbrook Letter of Credit, the Parties agree to cooperate to effect the termination and surrender of such Woodbrook Letter of Credit as promptly as practicable. In any event, Plaintiffs agree not to draw under a Woodbrook Letter of Credit after CDE has made all required payments under Paragraph 5 and Paragraph 10 of this Consent Decree secured thereby.

      c.    <u>General Terms for Woodbrook Letters of Credit</u>. The Woodbrook Letters of Credit shall be issued for the benefit of the Plaintiffs in accordance with the terms of this Consent Decree, shall be irrevocable, and shall be issued by a bank or other financial institution or entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency. Upon this Court's entry of this Consent Decree and the United States District Court for the District of Massachusetts's entry of the New Bedford Harbor Decree (and only if both such events have occurred), the Plaintiffs may draw on their respective Woodbrook Letters of Credit if CDE fails to make a payment required under Paragraph 5 or Paragraph 10 of this Consent Decree (as applicable), and in such case only in the amount of such failed payment. Any amount drawn by EPA shall be deposited by EPA in the Woodbrook Road Dump Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      The total amount available to be drawn under each Woodbrook Letter of Credit shall be reduced by any amounts drawn thereon. If requested by CDE, after CDE has successfully made a required payment under Paragraph 5 or Paragraph 10 (as applicable), the Parties agree to cooperate to effect a reduction in the value of any relevant Woodbrook Letter of Credit by an amount matching the payment made by CDE.

      Upon any renewal or extension of any Woodbrook Letter of Credit otherwise in accordance with this Paragraph 12, the amount available to be drawn thereunder shall not be required to exceed the maximum amount of CDE's remaining payment obligations under

Paragraph 5 or Paragraph 10 (as applicable) of this Consent Decree at such time.

       d.    <u>Replacement Letters of Credit</u>.  At least 30 days prior to the then-effective expiration date of any Woodbrook Letter of Credit (other than any Woodbrook Letter of Credit for which CDE, at least 30 days prior to such expiration date, has obtained a replacement letter of credit that complies with this Paragraph 12, as contemplated below, and will be available to be drawn upon no later than the expiration of such Woodbrook Letter of Credit), CDE shall establish a segregated escrow account for the benefit of Plaintiffs (a "Segregated Account"). This Segregated Account shall receive the proceeds of any drawing under any particular early-expiring Woodbrook Letter of Credit prior to its expiration, as contemplated below, unless CDE establishes a replacement letter of credit, as contemplated below.

       The Parties acknowledge and agree that, with respect to any particular Woodbrook Letter of Credit requirement herein, CDE shall not be required to maintain any particular letter of credit with any particular issuer for any particular period so long as (subject to the drawing and escrow provisions below) it maintains a letter of credit satisfying the relevant requirements under this Paragraph 12 for such Woodbrook Letter of Credit at all relevant times.  Accordingly, in the event that the issuer of any Woodbrook Letter of Credit shall only commit to provide such Woodbrook Letter of Credit with an expiration date, or shall terminate or decline to renew or extend the term thereof, prior to the time until which the relevant Woodbrook Letter of Credit is otherwise required to be maintained under this Paragraph 12, then CDE shall use its best commercially reasonable efforts to cause to be issued for the benefit of the Plaintiffs one or more replacement letters of credit (which may be provided sequentially) otherwise satisfying the applicable requirements of this Paragraph 12.  If CDE shall fail to so procure such a replacement letter of credit at least 30 days prior to the then-effective expiration date of the relevant early-expiring existing Woodbrook Letter of Credit, then the relevant Plaintiff may draw the remaining available amount under the relevant existing Woodbrook Letters of Credit, and the proceeds thereof shall be deposited into a Segregated Account CDE established for the benefit of the Plaintiffs on terms consistent with this Paragraph 12 and the other terms of this consent decree (it being understood that all funds remaining in such Segregated Account shall be released to CDE upon the subsequent issuance of a replacement letter of credit in compliance with this Paragraph 12).  The Parties acknowledge and agree that any such early termination or non-extension of a Woodbrook Letter of Credit shall not constitute a default under this Consent Decree, so long as CDE establishes a Segregated Account that receives the proceeds of any drawing under such Woodbrook Letter of Credit before it is terminated early or is not extended or replaced, as contemplated above.

## VII.    FAILURE TO COMPLY WITH CONSENT DECREE

    13.    **Interest on Payments.**  If Settling Defendant fails to make any payment required by Paragraph 5 or Paragraph 10 by the required due date, interest shall continue to accrue on any unpaid amounts due pursuant to Paragraph 5 and Paragraph 10 until the total amount due has

been received.  If Settling Defendant fails to make the payment required by Paragraph 6 (Insurance Proceeds Escrow Account) by the required due date under Paragraph 6, Interest shall continue to accrue on the unpaid balance from the date payment was due through the date of payment.

14. **Stipulated Penalty**

a. If any amounts due to EPA, the State, or the Trustees under Section VI are not paid by the required date, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 133 (Interest on Payments), 1% of the amount of the late payment per day that such payment is late.

b. Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by either EPA or the State.  For stipulated penalties that Settling Defendant owes to the United States, Settling Defendant shall make all payments at https://www.pay.gov in accordance with the procedures under Paragraph 7 and shall send notice of such payments in accordance with the procedures under Paragraph 9 (Notice of Payment). Settling Defendants shall indicate in the comment field on the https://www.pay.gov payment form that the payment is for stipulated penalties.  Settling Defendant shall make all payments to the State pursuant to Paragraph 11 and shall send notice of such payments in accordance with the procedures under Paragraph 11.

c. Penalties shall accrue as provided in this Paragraph regardless of whether EPA or the State has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

15. If the United States or the State brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States and the State for all costs of such action, including but not limited to costs of attorney time.

16. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

17. Notwithstanding any other provision of this Section, the United States and the State may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Payments) or from performance of any other requirements of this Consent Decree.

## VIII.   COVENANTS BY PLAINTIFFS

18.     Except as specifically provided in Section IIX (Reservation of Rights by Plaintiffs), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), regarding the Site.  With respect to present and future liability, these covenants shall take effect upon the Effective Date.  These covenants are contingent upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree and the New Bedford Harbor Decree, including but not limited to, payment of all amounts due under both Consent Decrees and any Interest or stipulated penalties due thereon under both Consent Decrees.  These covenants are also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to EPA by Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in Paragraph 37.  These covenants extend only to Settling Defendant and do not extend to any other person.

19.     In consideration of the payments that shall be made by CDE under the terms of this Consent Decree and except as specifically provided in Section IX (Reservation of Rights by Plaintiffs), New Jersey covenants not to sue or to take administrative action against CDE pursuant to Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.,* the Industrial Site Recovery Act, N.J.S.A. 13:1 K-6 *et seq.,* and the common law of nuisance, negligence and strict liability, with regard to the Site.  With respect to present and future liability, these covenants shall take effect upon the Effective Date.  These covenants not to sue are conditioned upon the satisfactory performance by CDE of its obligations under this Consent Decree, including but not limited to: 1) payment of all amounts due under Section VI (Payments), including any conditional payment obligations; and 2) payment of any Interest or stipulated penalties due under Section VII (Failure to Comply with Consent Decree).

## IX.   RESERVATION OF RIGHTS BY PLAINTIFFS

20.     The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Section VIII (Covenants by Plaintiffs).  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendant with respect to:

         a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

         b.     criminal liability;

c.     liability based on the ownership or operation of the Site by Settling Defendant when such ownership or operation commences after signature of this Consent Decree by Settling Defendant;

d.     liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Site after signature of this Consent Decree by Settling Defendant; and

e.     liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

21.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 37 is false or, in any material respect, inaccurate.

## X.     COVENANTS BY SETTLING DEFENDANT

22.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site and this Consent Decree, including but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.     any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.     any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law, relating to the Site.

d.     Any claim or indirect claim for reimbursement from the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund, including but not limited to funds from the New Jersey Spill Compensation Fund and the Hazardous Discharge Cleanup Fund.

23.     Except as provided in Paragraph 05 (claims against other potentially responsible parties ("PRPs") and Paragraph 31 (Res Judicata and other Defenses), these covenants shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to any of the reservations set forth in Section IIX (Reservations of Rights by Plaintiffs), other than in Paragraph 20.a. (liability for failure to meet a requirement of the Consent Decree) or 20.b. (criminal liability), but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

24.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

25.     Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for response costs and for Natural Resource Damages and assessment costs relating to the Site against any other person who is a PRP under CERCLA at the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

## XI.     EFFECT OF SETTLEMENT/CONTRIBUTION

26.     Except as provided in Paragraph 05 (claims against other PRPs), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Section X (Covenants by Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

27.     The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and N.J.S.A. 58:10-23.11f.a.(2)(b), and that Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree.  The "matters addressed" in this

Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States, the State, or any other person, and all Natural Resource Damages, provided, however, that if the United States exercises rights under the reservations in Section IIX (Reservations of Rights by Plaintiffs), other than in Paragraphs 20.a. (liability for failure to meet a requirement of Consent Decree) or 20.b. (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions or Natural Resource Damages that are within the scope of the exercised reservation.

28.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in conjunction with the State in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

29.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the State in conjunction with the United States in this action is a civil action within the meaning of N.J.S.A. 58:10-23.11u.a.(1)(a), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the State within the meaning of N.J.S.A. 58:10-23.11f.a.(2)(b).

30.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing no later than 60 days prior to the initiation of such suit or claim.  Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing within 10 days after service of the complaint or claim upon it.  In addition, Settling Defendant shall notify EPA and DOJ and the State within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

31.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section VIII.

## XII.   RETENTION OF RECORDS

32.     Until ten years after the Effective Date, Settling Defendant shall preserve and retain all non-identical copies of records, reports, documents, and other information, including records, reports, documents, and other information in electronic form (hereinafter referred to as "Records") now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that if Settling Defendant is potentially liable as an owner or operator of the Site, Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

33.     After the conclusion of the record retention period, Settling Defendant shall notify EPA and DOJ and the State at least 90 days prior to the destruction of any such Records, and, upon request by EPA or DOJ or the State, except as provided in Paragraph 34 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to EPA or the State.

34.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a Record is privileged or protected as provided under federal and/or State law, provided it complies with Paragraph 04.b., and except as provided in Paragraph 0.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted.  If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected information only.  Settling Defendant shall retain all Records that it claims to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c.     Settling Defendant may make no claim of privilege or protection regarding:

(1)     any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2)     the portion of any Record that Settling Defendant is required to create or generate pursuant to this Consent Decree.

19

35.    **Business Confidential Claims**. Settling Defendant may assert that all or part of a Record submitted to Plaintiffs under this Section is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b).  Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Defendant asserts a business confidentiality claim.  Records that Settling Defendant claims to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

36.    Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

37.    Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.    not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State, and that it has fully complied with any and all EPA and State requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law;

b.    submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

c.    fully disclosed to EPA any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

### XIII.   NOTICES AND SUBMISSIONS

38.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a

change to the other Parties in writing.  Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ by email**:                eescasemanagement.enrd@usdoj.gov

**As to DOJ by regular mail**:    EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
INSERT EMAIL ADDRESS
Re: DJ # 90-11-3-11024

**As to EPA**:                                Woodbrook Road Dump Site
Remedial Project Manager
New Jersey Remediation Branch
United States Environmental, Protection Agency
Region 2, 19th Floor
290 Broadway
New York, NY 10007-1866
salkie.diane@epa.gov

Woodbrook Road Dump Site Attorney
Office of Regional Counsel
United States Environmental Protection Agency
Region 2, 17th Floor
290 Broadway
New York, NY 10007-1866
schwenk.deborah@epa.gov

**As to the State**:                      Attn: Section Chief
Hazardous Site Litigation Section
Division of Law
Richard J. Hughes Justice Complex
25 Market Street
Post Office Box 093
Trenton, New Jersey 08625-0093

Attn: Director, Legal Affairs
New Jersey Department of Environmental Protection
401 East State Street

21

Trenton, New Jersey 08625-0420

**As to Settling Defendant**:        Cornell-Dubilier Electronics, Inc.
c/o Jonathan M. Ettinger, Esq.
Euripides Dalmanieras, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
jettinger@foleyhoag.com
edalmani@foleyhoag.com

## XIV.   RETENTION OF JURISDICTION

39.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XV.     INTEGRATION/APPENDICES

40.     This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree and the New Bedford Harbor Decree.  The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a map of the Site.

"Appendix B" is a list of the financial documents submitted to EPA by Settling Defendant.

"Appendix C" is a list of the insurance documents submitted to EPA by Settling Defendant.

## XVI.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

41.     This Consent Decree shall be lodged with the Court for a period of at least 60 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.  In the event of the United States' withdrawal from this Consent Decree, the State reserves its right to withdraw from this Consent Decree. The State also reserves the right to withdraw or withhold its

consent to the entry of this Consent Decree if comments received pursuant to the 60-day public notice and comment period of N.J.S.A. 58:10-23.11e2 disclose facts or considerations which show that this Consent Decree violates State law. In the event of the State's withdrawal from this Consent Decree, the United States reserves its right to withdraw from this Consent Decree.  If either the United States or the State withdraws from this Decree, Settling Defendant reserves its right to withdraw from this Decree.

42.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XVII.   CONDITIONAL CONSENT OF THE PARTIES

43.     This Consent Decree and the New Bedford Harbor Decree were negotiated as parts of a single ability-to-pay settlement.  As a result, the effectiveness of this Consent Decree is contingent upon the approval and entry of the New Bedford Harbor Decree and the effectiveness of the New Bedford Harbor Decree is contingent upon the approval and entry of this Consent Decree.  If either the New Bedford Harbor Decree or this Consent Decree is not approved and entered by a Court, this Consent Decree shall be null and void and of no further effect.

## XVIII. SIGNATORIES/SERVICE

44.     Each undersigned representative of Settling Defendant, the United States, and the New Jersey Office of the Attorney General, Division of Law, Environmental Enforcement and Environmental Justice Section, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

45.     Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

46.     Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail or electronic mail on its behalf with respect to all matters arising under or relating to this Consent Decree.

## XIX.     FINAL JUDGMENT

47.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

23

SO ORDERED THIS _____DAY OF _____, 2022.

_____
United States District Judge

Signature Page for Consent Decree Regarding Woodbrook Road Dump Superfund Site

**FOR THE UNITED STATES OF AMERICA**:


ELLEN M. MAHAN
Deputy Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section


May 31, 2022                    *s/ Patrick B. Bryan*
Dated                          PATRICK B. BRYAN
                               Senior Attorney
                               U.S. Department of Justice
                               Environment and Natural Resources Division
                               Environmental Enforcement Section
                               P.O. Box 7611
                               Washington, D.C. 20044-7611
                               (202) 616-8299
                               patrick.bryan@usdoj.gov

Signature Page for Consent Decree Regarding Woodbrook Road Dump Superfund Site

Evangelista,
Pat

Digitally signed by
Evangelista, Pat
Date: 2022.05.17 10:11:30
-04'00'

_____
Dated

PAT EVANGELISTA
Division Director
Superfund and Emergency Management Division
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, New York 10007-1866

Deborah Schwenk

Digitally signed by Deborah
Schwenk
Date: 2022.05.16 12:16:35 -04'00'

DEBORAH SCHWENK
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, New York 10007-1866

26

Signature Page for Consent Decree Regarding Woodbrook Road Dump Superfund Site

**FOR THE STATE OF NEW JERSEY**:

May 17, 2022
Dated

DAVID HAYMES
Administrator
New Jersey Spill Compensation Fund
New Jersey Department of Environmental Protection
401-06J PO Box 420
Trenton, NJ 08625-0420

May 17, 2022
Dated

ELIZABETH DRAGON
Assistant Commissioner
Community Investment & Economic Revitalization
Program
New Jersey Department of Environmental Protection
401-06J PO Box 420
Trenton, NJ 08625-0420

May 18, 2022
Dated

ANDREW P. VERDONE
Deputy Attorney General
New Jersey Division of Law and Public Safety

27

Signature Page for Consent Decree Regarding Woodbrook Road Dump Superfund Site

**FOR CORNELL DUBILIER ELECTRONICS, INC.:**

5/16/22
_____
Date

Name (print): James Kaplan
Title: CEO
Address: 140 Technology Pl.
Liberty, S.C. 29657

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Jonathan M. Ettinger
Title:         Attorney
Company:       Foley Hoag LLP
Address:       155 Seaport Boulevard
               Boston, MA 02210
Phone:         617-832-1195
email:         jettinger@foleyhoag.com

28

# APPENDIX A



SOURCE: USGS TOPOGRAPHIC MAP, PLAINFIELD, N.J.
QUADRANGLE 1995 7.5 MINUTE SERIES

★ OTHER KNOWN CONTAMINATED SITES:

1 FORMER CHEVRON CHEMICAL CO.
  ORTHO DIVISION

2 FORMER SOUTH PACIFIC LANDFILL

3 AMPCO INC.

4 JERSEY TRUCKING INC.

5 FORMER CORNELL - DUBILIER ELECTRONICS INC.

**TRC** **TRC ENVIRONMENTAL CORP.**
57 East Willow Street
Millburn, New Jersey 07041

SITE LOCATION

WOODBROOK ROAD DUMP SITE - PLAINFIELD, NJ

JOB NO. 2335ES.2450-106647.0000.0000

| PP/ODL | DATE: FEBRUARY 2012 | FIGURE: 1 |

0     2000 FT.
APPROXIMATE SCALE

FILE: M:\CAD FILES\VISION PROJECTS\106647\PHASE 2600\SITE LOCATION MAP FIGURE 1.DWG,  DATE: 02/23/2012 04:42:19PM

# APPENDIX B

## APPENDIX B (Financial Documents)

Balance Sheets for Cornell Dubilier Electronics, Inc., audited for 2018-2020, and preliminary unaudited for 2021.

Federal Tax Returns for CDE Holdings, Inc. and Subsidiaries, including Cornell-Dubilier Electronics, Inc., for 2011 – 2013, 2015 – 2020.

Audited Consolidated Financial Statements for Cornell-Dubilier Electronics, Inc. and Subsidiaries, years ending August 31, 2012 – 2018, and August 31, 2019 – 2020.

Unaudited Consolidated Financial Statements for Cornell-Dubilier Electronics, Inc. and Subsidiaries, year ending August 31, 2019

Internal Year-to-Date Financial Statements for Cornell-Dubilier Electronics, Inc. and Subsidiaries, September 1, 2017 – January 31, 2018

CDE Holdings Inc. and Subsidiaries Information on persons owning voting stock and James R. Kaplan and James P. Kaplan Compensation information, 2011 – 2015

Cornell-Dubilier Electronics, Inc. 2017-2018 Profit Plan

Summary of Officers' and Directors' salaries, August 31, 2012 – January 31, 2018

CDE Holdings Inc. and Subsidiaries organizational chart, undated

CDE Inc. and Subsidiaries list of real estate assets, undated

Settlement Agreement and Mutual Release between Cornell-Dubilier Electronics, Inc. and Roger Sevigny, February 20, 2013

Agreement between Cornell-Dubilier Electronics, Inc., Federal Pacific Electric Company, and Allstate Insurance Company, December 20, 2007

Settlement Agreement and Release between Federal Pacific Electric Co. and Cornell-Dubilier Electronics, Inc. and Liberty Mutual, June 10, 1996

Notice of Determination - Liquidation of Midland Insurance Co.

# APPENDIX C

**APPENDIX C (Insurance Information)**

CDE has provided copies of all insurance policies in effect from 1959 through September 1, 1983, issued to CDE, and its corporate affiliates, including Federal Pacific Electric Company, UV Industries, Inc., Reliance Electric Company and Exxon Corporation.