## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| UNITED STATES OF AMERICA, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND )<br><br>Plaintiffs, )<br><br>v. )<br><br>CORNELL DUBILIER ELECTRONICS, INC., )<br><br>Defendant. ) | Case No. 2:22-cv-03245 |

---

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>CONSENTED-TO MOTION TO ENTER CONSENT DECREE</u>

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................7

   I.   The CERCLA Enforcement Program........................................................7

   II.  Ability-To-Pay Settlements Under CERCLA .................................................9

   III. The Site ..............................................................................................10

   IV. This Civil Action and Consent Decree .........................................................13

ARGUMENT ......................................................................................................15

   I.   Legal Standard .....................................................................................16

   II.  The Court Should Enter the Consent Decree. .................................................16

      A.  The Consent Decree Is Fair...........................................................17

      B.  The Consent Decree Is Reasonable...........................................................18

      C.  The Consent Decree Advances the Objectives of CERCLA. ....................19

   III. TETCO's Public Comment Does Not Demonstrate That The Decree Is Unfair, Unreasonable, or Inconsistent with CERCLA .................................20

CONCLUSION ....................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL AND STATE CASES</u>                                      <u>PAGES</u>

*In re Cuyahoga Equip. Corp.,*
   980 F.2d 110 (2d Cir. 1992)...................................................................... 6, 10

*In re Integrated Telecom Express*,
   384 F.3d 108 (3d Cir. 2004).........................................................................28

*In re Tutu Water Wells CERCLA Litig.*,
   326 F.3d 201 (3d Cir. 2003)................................................................. passim

*Marsh v. N.J. Dep't of Envtl. Prot.*,
   703 A.2d 927 (N.J. 1997)...............................................................................8

*New Castle County v. Halliburton NUS Corp.*,
   111 F.3d 1116 (3d Cir. 1997)........................................................................8

*Pennwalt Corp. v. Plough, Inc.*,
   676 F.2d 77 (3d Cir. 1982)..........................................................................16

*United States v. Alcan Aluminum Corp.*,
   964 F.2d 252 (3d Cir. 1992)..........................................................................7

*United States v. Bay Area Battery,*
   895 F.Supp. 1524 (N.D. Fla. 1995)..................................................... passim

*Unites States v. Brook Village Assoc.*,
   2006 WL 3227769 (D.R.I. Nov. 06, 2006)................................................ 24, 30

*United States v. Cannons Eng'g Corp.,*
   899 F.2d 79 (1st Cir. 1990) ................................................................. passim

*United States v. Cannons Eng'g Corp.*,
   720 F. Supp. 1027 (D. Mass. 1989), *aff'd*,
   899 F.2d 79 (1st Cir. 1990) ............................................................ 16, 17, 25

*United States v. Coeur d'Alenes Co.*,
   767 F.3d 873 (9th Cir. 2014)............................................................... passim

*United States v. Coeur d'Alenes Co.*,
   2012 WL 12895660 (D. Idaho Nov. 28, 2012)..........................................10

*United States v. Compaction Systems Corp.*,
   88 F. Supp. 2d 339 (D.N.J. 1999) .............................................................31

*United States v. Cornell-Dubilier Elec., Inc.*
   2014 WL 4978635 (D.N.J. Oct. 03, 2014).......................................... 6, 10, 12

*United States v. Davis,*
   261 F.3d 1 (1st Cir. 2001) .......................................................................... 27, 33

*United States v. Hecla Ltd.*,
   2011 WL 3962227 (D. Idaho Sept. 08, 2011)...................................... 10, 27

*United States v. IMC Eastern Corp.*,
  2022 WL 4134321 (E.D.N.Y. Sept. 12, 2022) ............................................ passim
*United States v. Kramer*,
  19 F. Supp. 2d 273 (D.N.J. 1998) .............................................................. passim
*United States v. Kramer*,
  953 F. Supp. 592 (D.N.J. 1997) .........................................................................30
*United States v. Manzo*,
  279 F. Supp. 2d 558 (D.N.J. 2003) .......................................................................8
*United States v. Manzo*,
  182 F. Supp. 2d 385 (D.N.J. 2000) ................................................................ 5, 22
*United States v. Occidental Chem. Corp.*,
  200 F.3d 143 (3d Cir. 1999) .......................................................... 34, 35, 36
*United States v. Rohm & Hass Co.*,
  721 F. Supp. 666 (D.N.J. 1989) .........................................................................20
*United States v. Southeastern Pa. Transp. Auth.*,
  ("SEPTA"), 235 F.3d 817 (3d Cir. 2000) .......................................... 7, 16, 26, 37
*United States v. State of Oregon*,
  913 F.2d 576 (9th Cir. 1990) ......................................................................... 17, 25
*United States v. Unimatic Manufacturing Corp.*,
  Case No. 2:20-cv-17284 (KSJ) (CLW), 2021 WL 1811651 ........................... 5, 10
*United States v. Vertac Chem. Corp.*,
  756 F. Supp. 1215 (E.D. Ark. 1991) *aff'd sub nom.*
  *United States* v. *Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992) .................... passim

## FEDERAL AND STATE STATUTES

18 U.S.C. § 1905 ...............................................................................................27
42 U.S.C. § 9601(16) .........................................................................................32
42 U.S.C. § 9601(35) .........................................................................................22
42 U.S.C. § 9607 ...............................................................................................31
42 U.S.C. § 9607(a) ..................................................................................... 8, 31
42 U.S.C. § 9607(a)(4)(C) .................................................................................32
42 U.S.C. § 9607(b)(3) .......................................................................................22
42 U.S.C. § 9613 ...............................................................................................31
42 U.S.C. § 9622(a) ..................................................................................... 8, 20
42 U.S.C. §§ 9622(d)(2) .............................................................................. 3, 36
42 U.S.C. §§ 9622(e)(3)(A) ........................................................................ 1, 9, 18
42 U.S.C. §§ 9622(f)(6)(B) ......................................................................... 1, 9, 18
N.J.S.A. 58:10 .............................................................................................4, 8

## <u>FEDERAL AND STATE REGULATIONS</u>

28 C.F.R. § 50.7 ................................................................................... 3, 36

87 Fed. Reg. 34304 ..................................................................................4

53 N.J.R. 1448(a) ....................................................................................4

## INTRODUCTION

The United States and State of New Jersey (collectively, "Plaintiffs" or the "Governments") ask this Court to approve the proposed Consent Decree (the "Consent Decree" or "Decree"), lodged with the Court on May 31, 2022, reflecting the Plaintiffs' settlement with Cornell Dubilier Electronics, Inc. ("CDE" or "Defendant") relating to the Woodbrook Road Dump Superfund Site (the "Woodbrook Site") located in South Plainfield, New Jersey.[1]  CDE is a family-owned company with limited financial resources.[2]  During settlement negotiations, CDE claimed that it had limited ability to pay ("ATP") the Superfund cleanup costs that the United States sought to recover.[3]  CERCLA contemplates and "expressly authorizes ability to pay settlements."[4]  The United States, working with a financial expert, confirmed CDE's claim of limited ATP, based on company financial data that CDE submitted to the United States.[5]

---

[1]  *See* ECF No. 2-1.

[2]  *See* October 21, 2022 Letter from J. Ettinger to P. Bryan at page 1, attached hereto as Exhibit 9.

[3]  *See id.*

[4]  *United States v. IMC Eastern Corp.*, 2022 WL 4134321, at *7 (E.D.N.Y. Sept. 12, 2022); *see* 42 U.S.C. §§ 9622(e)(3)(A), 9622(f)(6)(B).

[5]  *See generally* Declaration of Dan Leistra-Jones attached hereto as Exhibit 6.

1

Under the proposed Decree, CDE agrees to pay what it can afford toward cleanup of the Woodbrook Site: $4 million, plus applicable interest.[6] CDE's $4 million payment will be split between the United States and the State of New Jersey ("New Jersey" or the "State").[7] Specifically, New Jersey will receive $373,500 to resolve its cost recovery claims, the United States Department of Interior and the State will receive $265,000 for natural resource damages, and the United States Environmental Protection Agency ("EPA"), the lead cleanup agency, will receive $3,361,500 for the Site's cleanup.[8] The money that CDE has agreed to pay under the Consent Decree provides needed funding toward ongoing efforts to clean up polychlorinated biphenyls ("PCBs") and other contaminants that are present in the soils of the Site and toward the United States Department of Interior's and the State's restoration of the Site's natural resources.

Relatedly, on May 31, 2022, the United States and Commonwealth of Massachusetts lodged a $4 million consent decree in *United States and Commonwealth of Massachusetts v. AVX Corp. et al.*, Civil Action Nos. 8303882-Y and 83-3889 (D. Mass), relating to the New Bedford Harbor Superfund Site in Bristol County, Massachusetts (the "New Bedford Harbor Supplemental Decree" or "Supplemental Decree)." This settlement supplements an earlier consent decree

---

[6] *See* Decree ¶¶ 5, 10.

[7] *See id.*

[8] *See id.*

2

in that court, entered in that matter in 1992, and arises under the reservation of rights set forth in the 1992 consent decree authorizing the United States and Commonwealth of Massachusetts to seek additional relief based on unknown conditions or new information.[9]  The United States' total unreimbursed costs at the New Bedford Harbor Site, one of the largest Superfund sites in the country, exceed $500 million.[10]

The $4 million New Bedford Harbor Supplemental Decree, along with the Decree in this action, resolve CDE's liability for response costs at both the New Bedford Harbor Site and the Woodbrook Site, respectively.  These settlements are the result of approximately four years of good-faith settlement negotiations between the United States, the State of New Jersey, the Commonwealth of Massachusetts, and CDE.  By agreeing to pay $4 million under the proposed Decree and $4 million under the New Bedford Harbor Supplemental Decree, CDE has agreed to pay what it can afford toward the cleanup of two Superfund sites of national significance.[11]

In accordance with CERCLA (42 U.S.C. § 9622(d)(2)) and Department of Justice regulation (28 C.F.R. § 50.7), the United States invited public comment on the settlement for a period of 60 days upon publication of a notice in the Federal

---

[9]  *See* New Bedford Harbor Supplemental Decree at § 4, attached hereto as Exhibit 4.

[10]  *See* Declaration of Joan Buonopane at ¶6, attached hereto as Exhibit 5.

[11]  *See* Leistra-Jones Decl. at ¶¶ 8-10.

Register on June 6, 2022.[12]  Similarly, pursuant to N.J.S.A. 58:10-23.11.e2, the

State published notice of the Consent Decree in the New Jersey Register on July

18, 2022, thereby commencing a 60-day comment period required under State

law.[13]  Although the State of New Jersey's comment period initially was scheduled

to close on September 16, 2022, the State extended its public comment period to

November 25, 2022, to cure a potential procedural defect relating to how the State

initially published its notice of the Decree.[14]

The comment periods have now ended.  The United States received one

comment.  It is from Texas Eastern Terminal Company ("TETCO"), the current

owner of the Site and a potentially liable party under CERCLA for the Site's

contamination.  TETCO's comment is attached at Exhibit 2.[15]  TETCO, a pipeline

company, opposes entry of the proposed Decree.  TETCO's comment, however, is

based on four faulty assumptions: (1) that CDE is the only potentially responsible

party at the Site that could be held liable for the Site's contamination; (2) that CDE

is not, in fact, an ATP party; (3) that it is inappropriate to settle on an ATP basis

---

[12]  *See* 87 Fed. Reg. 34304.

[13]  *See* 53 N.J.R. 1448(a).

[14]  *See* New Jersey Department of Environmental Protection website announcing extension of
state comment period for the Decree, located at https://www.nj.gov/dep/srp/legal/.

[15] TETCO also submitted a separate comment to New Jersey during the State's public comment
period, which is attached hereto as Exhibit 3.  TETCO's comment to the State is similar to its
comment to the United States.

without somehow measuring the degree of the settling party's liability; and (4) that the proposed Decree would result in a "windfall" to the benefit of the New Bedford Harbor Site.

Each of these premises is false.  <u>First</u>, the United States may seek any remaining cleanup costs for the Site from TETCO; as a current owner of the Site, TETCO is a responsible party under CERCLA that may be found jointly and severally liable for all Site-related costs (subject to any defenses that TETCO may wish to raise in any future CERCLA litigation).[16]  <u>Second</u>, while TETCO speculates that CDE is not a proper ATP party (based on news articles and a YouTube video), the United States, working with an expert financial witness who has performed hundreds of ATP analyses and has been qualified to testify by federal courts, has reviewed carefully substantial financial documentation from CDE and reached a principled conclusion that the proposed CDE settlement is appropriate based on CDE's limited financial resources.[17]  This type of financial analysis has formed the basis of numerous ATP settlements that federal courts across the country, including this Court, have approved.[18]  <u>Third</u>, because the

---

[16]  "Section 107(a)(1) of CERCLA imposes liability on current owners of a site even if the disposal of the substances occurred before the commencement of ownership and the owner has not been shown to have caused a release."  *See United States v. Manzo*, 182 F. Supp. 2d 385, 397 (D.N.J. 2000) (citations omitted).

[17]  *See* Leistra-Jones Decl. at ¶¶4-5, 8-10.

[18]  *See United States v. Unimatic Manufacturing Corp.*, Case No. 2:20-cv-17284 (KSJ) (CLW),

settlement is based on what CDE can afford, there is no need for the Court to

determine what CDE should pay if it had the same financial resources as TETCO.[19]

Fourth, because the United States has unreimbursed response costs at the New

Bedford Harbor Site exceeding $400 million, TETCO cannot seriously suggest the

New Bedford Harbor Site is somehow unjustly enriched by the CDE settlement.

The United States hardly acted arbitrarily by splitting the CDE settlement evenly

between the Woodbrook and the New Bedford Harbor Sites, but rather, diligently

considered the relevant factors affecting each site (including potential litigation

risk, health effects, and total costs).[20]  Consistent with case law, EPA's expertise in

---

2021 WL 1811651, at *2 n.2 (D.N.J. May 6, 2021) (noting that CERCLA settlement is based on ability to pay); *United States v. Cornell-Dubilier Electronics, Inc.*, Case No. 12-5407 (JLL), 2014 WL 4978635, at *13 (D.N.J. Oct. 03, 2014) (entering CERCLA ability-to-pay consent decree based on ability-to-pay); consent decree at Section I.L (noting that settlement is based on CDE's limited ability to pay), ECF No. 129, Case No. 23-5407 (D.N.J. Oct. 3, 2014) (court entered consent decree); *United States v. Coeur d'Alenes Co.*, 767 F3d 873, 875 (9th Cir. 2014); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 119 (2d Cir. 1992); *United States v. Bay Area Battery,* 895 F. Supp. 1524, 1529-30 (N.D. Fla. 1995); *United States* v. *Vertac Chem. Corp.,* 756 F. Supp. 1215, 1218-19 (E.D. Ark. 1991), *aff'd sub nom. United States* v. *Hercules, Inc.,* 961 F.2d 796 (8th Cir. 1992).  This Court, in fact, previously approved an ATP CERCLA settlement involving CDE in 2014.

[19]  *See, e.g., United States v. Coeur D'Alenes Co.*, 767 F.3d 873, 878 (9th Cir. 2014) (finding in context of approving an ATP settlement that there is "no reason for the district court to spend its time quantifying precisely how disproportionately [objecting responsible party] may be held liable").

[20]  *See* Declaration of Michael Northridge at ¶¶3-9, attached hereto as Exhibit 7.

crafting environmental settlements, such as the proposed CDE settlement, is entitled to deference.[21]

After due consideration, and as discussed in more detail below and in the attached Responsiveness Summary (attached at Exhibit 2), TETCO's public comment does not demonstrate that the Consent Decree is inappropriate, improper, or inadequate. The settlement contained in the proposed Consent Decree reflects the Governments' careful consideration and balancing of the benefits of settlement today against the risks and delays associated with litigation against an ATP party with limited financial resources. The Consent Decree is fair, reasonable, and consistent with the goals and purposes of CERCLA. It is ripe for entry.

## BACKGROUND

### I.    The CERCLA Enforcement Program

In 1980, Congress enacted CERCLA to "ensure the cleanup of the nation's hazardous waste sites." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 206 (3d Cir. 2003). CERCLA empowers the Executive Branch of the federal government with broad authority to investigate and clean up hazardous waste sites. *See United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258 (3d Cir. 1992). One of the many tools at EPA's disposal to effectuate CERCLA's goals is a

---

[21] *See United States v. Southeastern Pa. Transp. Auth. ("SEPTA")*, 235 F.3d 817, 822 (3d Cir. 2000) (finding that the "the district court owes deference to EPA's expertise" in crafting environmental settlements").

consent decree, to be used "[w]henever practicable and in the public interest . . . to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a); *see In re Tutu Wells*, 326 F.3d at 206.

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the United States to recover its costs of responding to releases of hazardous substances from potentially responsible parties ("PRPs"). Pursuant to Section 107(a), PRPs include past owners and operators of Superfund sites at the time of disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as arrangers, generators, and transporters of hazardous substances sent to Superfund sites. Section 107(a) of CERCLA creates strict, joint and several liability where environmental harm is indivisible. *See United States v. Manzo*, 279 F. Supp. 2d 558, 562 (D.N.J. 2003) (citing *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1121 (3d Cir. 1997)).

Similarly, the New Jersey Legislature enacted the Spill Act in 1976 "to provide liability for damage sustained within [the] State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution" and substances. *See* N.J.S.A. § 58.10-23.11a. The Supreme Court of the State of New Jersey has described the Spill Act as "a pioneering effort" in protecting both the State's environmental resources and purse. *Marsh v. N.J. Dep't of Envtl. Prot.*, 703 A.2d 927, 930 (N.J. 1997).

## II.    Ability-To-Pay Settlements Under CERCLA

At the outset of settlement negotiations, CDE requested to be considered as having limited ability to pay sufficient funds to resolve its liabilities in connection with the New Bedford and Woodbrook Sites.  CERCLA acknowledges that a party's ability to pay is an appropriate consideration when resolving a defendant's liability.  *See* 42 U.S.C. §§ 9622(e)(3)(A), 9622(f)(6)(B); *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014) (noting that "CERCLA expressly permits the government to take ability to pay into account when fashioning settlement").  EPA's "General Policy on Superfund Ability to Pay Determinations" dated September 30, 1997 ("1997 ATP Policy"), sets forth a general policy framework for ability to pay settlements.[22]  The 1997 ATP Policy states that ability to pay settlements "may be utilized to balance two interests: (1) that a [party] satisfies its liability associated with the cleanup of an environmental problem; and (2) that payment of the liability does not create an undue financial hardship for the [party]."[23]

Numerous courts have approved such settlements because they serve to reimburse the Superfund without imposing undue financial hardship on a settlor. *See United States v. Bay Area Battery,* 895 F. Supp. 1524, 1529-30 (N.D. Fla.

---

[22]  The 1997 ATP Policy is available on EPA's website at: https://www.epa.gov/enforcement/guidance-superfund-ability-pay-determinations.

[23]  1997 ATP Policy at 2, located at https://www.epa.gov/enforcement/guidance-superfund-ability-pay-determinations.

1995); *see also United States v. Coeur d'Alenes Co.*, 767 F3d 873, 875 (9th Cir. 2014); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 119 (2d Cir. 1992); *United States* v. *Vertac Chem. Corp.,* 756 F. Supp. 1215, 1218-19 (E.D. Ark. 1991), *aff'd sub nom. United States* v. *Hercules, Inc.,* 961 F.2d 796 (8th Cir. 1992). *United States v. IMC Eastern Corp.*, 2022 WL 4134321, at *7 - *9 (E.D.N.Y. Sept. 12, 2022). Courts show deference to the United States' ability-to-pay settlement determinations. *See Coeur d'Alenes*, 2012 WL 12895660, at *6 (D. Idaho Nov. 28, 2012); *Bay Area Battery*, 895 F. Supp. at 1531; *United States v. Hecla Ltd.*, 2011 WL 3962227 (D. Idaho Sept. 08, 2011), at *5. This Court has approved such settlements in the past, including a previous ATP consent decree involving CDE in 2014.[24]

## III.    The Site

The Site is located in South Plainfield, New Jersey. It consists of approximately 70 acres of undeveloped land that is contaminated with PCBs (as well as other contaminants that are co-located with the PCBs).[25] PCB

---

[24]   *See United States v. Unimatic Mfg.Corp.*, Case No. 2:20-cv-17284 (KSJ) (CLW), 2021 WL 1811651, at *2 n.2 (D.N.J. May 6, 2021) (noting that CERCLA settlement is based on ability to pay); *United States v. Cornell-Dubilier Elec., Inc.*, Case No. 12-5407 (JLL), 2014 WL 4978635, at *13 (D.N.J. Oct. 03, 2014) (entering CERCLA ability-to-pay consent decree based on ability-to-pay); consent decree at Section I.L (noting that settlement is based on CDE's limited ability to pay), ECF No. 129, Case No. 23-5407 (D.N.J. Oct. 03, 2014) (court entered consent decree).

[25] *See* EPA's Record of Decision, Woodbrook Road Dump Site, September 2013, at Page 11, located online at https://semspub.epa.gov/work/02/692666.pdf.

contamination was discovered in two dumping areas at the Site: the Eastern Dump and the Western Dump.[26]  Texas Eastern Terminal Company ("TETCO"), a natural gas pipeline company based in Texas, is the current owner of two of the three lots that comprise the Site, which encompass most of the Site's acreage.[27]  TETCO purchased its lots in the early 1970s.[28]  The Borough of South Plainfield is the current owner of the smallest of the three parcels.[29]

In the 1940s and 1950s, industrial waste and municipal debris were dumped at the Site.[30]  In September 1999, a local environmental group discovered partially buried, leaking capacitors on the Site.[31]  The New Jersey Department of Environmental Protection ("NJDEP") collected surface soil samples at locations where leaking electrical capacitors were also observed.[32]  In October 1999, NJDEP requested that EPA take the lead for the response at the Site.[33]

---

[26] *See* EPA Record of Decision at page 3, located at https://semspub.epa.gov/work/02/692666.pdf.

[27] *See* EPA Record of Decision at page 1, located at https://semspub.epa.gov/work/02/692666.pdf.

[28] *See id.*

[29] *See id.* at page 3, located at https://semspub.epa.gov/work/02/692666.pdf.

[30] *See id.* at page 1, located at https://semspub.epa.gov/work/02/692666.pdf.

[31] *See id.*

[32] *See id.* at 1-2.

[33] *See id.* at 1.

From 1936 to 1962, CDE operated a capacitor manufacturing facility in South Plainfield, New Jersey, less than one mile away from the Site.[34]  Many capacitors, some with CDE markings, were found at the Site.[35]  CDE's former manufacturing facility in South Plainfield is a distinct Superfund Site, known as the Cornell Dubilier Electronics, Inc. Superfund Site.  The Court entered a separate ATP settlement in 2014 relating to that site between the United States, New Jersey, and CDE in *United States and New Jersey v. Cornell-Dubilier Electronics, Inc.*, C.A. No. 12-CV-05407 (D.N.J.).

The United States has incurred approximately $6.5 million in unreimbursed response costs at the Woodbrook Site.[36]  In 2013, EPA issued a Record of Decision ("ROD"), which calls for over 120,000 cubic yards of contaminated soil and debris, including capacitors and capacitor parts, to be dug up and disposed of at a facility licensed to receive the waste.[37]  The 2013 ROD was modified in 2018 as set forth in an Explanation of Significant Differences issued by EPA to explain an increase in the remedy cost estimate based on EPA's further investigation of the

---

[34]  *See id.* at 1.

[35]  *See id.* at 1,2, 7.

[36]  *See* Complaint ¶14, ECF No. 1.

[37]  *See* EPA ROD at 36, located at located at https://semspub.epa.gov/work/02/692666.pdf.

Woodbrook Site.[38]  The current cost estimate to perform the remedy is about $45 million.[39]  In 2020, EPA's then Administrator tasked EPA with conducting an additional technical and scientific review of the cleanup plan in coordination with NJDEP.  EPA is currently nearing completion of this review.

## IV.    This Civil Action and Consent Decree

On May 31, 2022, the United States and State jointly filed the Complaint.  *See* ECF No. 1.  The Complaint alleges that CDE is liable under CERCLA Section 107 because CDE, as alleged, "arranged for the disposal or arranged with a transporter for transport for disposal of hazardous substances" at the Site.  Complaint ¶ 21 (ECF No. 1).  The Complaint also alleges that CDE is liable to the United States for the recovery of response costs, and also for recovery for destruction of, or loss of, natural resources at the Site.  *See id.* ¶¶ 20-29 (ECF No. 1).  Additionally, the State alleges that CDE is liable for the recovery of State cleanup costs and natural resource damages under the Spill Act.  *See id.* ¶¶ 37-42 (ECF No. 1).

The Consent Decree, and the related New Bedford Harbor Supplemental Decree, are two parts of a single ATP pay cash-out settlement for $8 million total,

---

[38]  *See* Explanation of Significant Differences Woodbrook Road Dump Superfund Site, Feb. 5, 2018, located at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://semspub.epa.gov/work/02/533917.pdf.

[39]  *See id.* at page 1.

plus interest. *See* Decree ¶¶ 5-10, 43 (ECF No. 2-1). Each site will receive half of the overall settlement amount. Here, the Consent Decree will require CDE to provide a lump sum payment of $4 million to resolve EPA's cost recovery claims, DOI's and the State's NRD claims relating to the Site, and the State of New Jersey's cost recovery claims. *See id.* ¶¶ 5-10. Specifically, EPA will receive $3,361,500 to resolve its claim for the costs of the site cleanup, the U.S. Department of Interior and the State will receive $265,000 for natural resource damages, and the State will receive $373,500 to resolve cost recovery claims. *See id.* Likewise, under the New Bedford Harbor settlement, CDE will provide a lump sum payment of $4 million to resolve EPA's and the Commonwealth of Massachusetts's reopener claim for additional response costs at the Site.[40]

The Consent Decree, and related New Bedford Harbor settlement, are based on the CERCLA model ATP agreement.[41] In that regard, the Consent Decree allows the United States to proceed against CDE if the Financial Information or Insurance Information that CDE provided is false or materially inaccurate. *See* Decree ¶ 21 (ECF No. 2-1).[42] The effectiveness of the Consent Decree is

---

[40] *See* Ex. 4 at ¶ 5 (New Bedford Harbor Supplemental Decree).

[41] *See* "Cashout Consent Decree For Ability to Pay Peripheral Parties (CERCLA ¶ 107)", located on EPA's website at https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=386.

[42] As discussed further in the attached Responsiveness Summary, TETCO's concern that CDE could be misleading the United States regarding its ability to pay is undercut, among other reasons, by the fact that the Decree is conditioned upon the veracity of the financial information

dependent upon the effectiveness of the New Bedford Harbor decree, and vice versa.  *See id.* ¶ 43.  This is necessary because both decrees were negotiated as parts of a single ATP settlement.  *See id.*  Hence, if either decree is not entered by the respective court, both will be null and void and of no further effect.[43]  *See id.*  Finally, because of the Governments' concerns over CDE's financial viability, CDE has agreed to obtain letters of credit to provide financial assurance of its payments under the Consent Decree.  *See id.* ¶ 12.

## ARGUMENT

---

that CDE provided to the United States.  *See* Decree ¶ 21.  As one court noted in approving a CERCLA ATP settlement over a similar objection, if TETCO's fears about CDE's financial condition "were to come to fruition, the government would have the right to rescind the agreement and take appropriate action against" CDE.  *IMC Eastern Corp.*, 2022 WL 4134321, at *8.

[43]  Courts have approved other environmental consent decrees with similar contingencies.  For example, district court approval may be contingent on a bankruptcy court also approving the same consent decree.  *See, e.g.*, Consent Decree entered on Jan. 28, 1988, in *United States v. Marine Power & Equipment Co.*, Case No. C85-382R (W.D. Wash.), at Section XI ("The parties recognize that the Consent Decree is subject to approval by the Bankruptcy Court. The parties shall not be bound by the provisions herein if the Bankruptcy Court disapproves the Consent Decree prior to entry by the Court."). In addition, past consent decrees have been contingent on the consummation of other agreements. *See, e.g.*, Final Modification of Consent Decree entered on Aug. 29, 2008, in *United States v. Asarco Inc.*, Case No. 83-C-2388 (Consolidated with Case No. 86-C-1675) (D. Colo.), at Para. 21 ("The effectiveness of this Settlement Agreement is also contingent upon the effectiveness of the Government-Resurrection/Newmont Settlement and on the effectiveness of the ASARCO-Resurrection/Newmont Settlement. If any of these contingencies are not satisfied, this Settlement Agreement shall be null and avoid and of no further effect."); Consent Decree entered on Sept. 29, 1998, in *United States v. Cornell-Dubilier Electronics, Inc.*, relating to the Sullivan's Ledge Site, Case No. 92-11865, (D.Mass.), at Paragraph T ("This Consent Decree is contingent upon the execution and satisfactory performance of the Private Party Agreement.").

## I.    Legal Standard

"There is a strong judicial policy in favor of parties voluntarily settling lawsuits." *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir. 1982).  The policy is "especially strong where a consent decree has been negotiated by the Department of Justice on behalf of the EPA." *United States v. Kramer*, 19 F. Supp. 2d 273, 281 (D.N.J. 1998) (citing *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd* 899 F.2d 79 (1st Cir. 1990)).

With this backdrop, the standard for deciding whether to enter a proposed consent decree is whether it is fair, reasonable, and consistent with the purposes that the underlying statute is intended to serve.  *In Re Tutu Water Wells CERCLA Lit.*, 326 F.3d 201, 210 (3d Cir. 2003); *United States v. Southeastern Pa. Transp. Auth*. ("*SEPTA*"), 235 F.3d 817, 823 (3d Cir. 2000).  The standard "is not whether the settlement is one which the court itself might have fashioned, or considers ideal, but whether the proposed decree is fair, reasonable, and faithful to the objective of the governing statute." *Kramer*, 19 F. Supp. 2d at 280.  Further, "the district court owes deference to EPA's expertise" in crafting environmental settlements.  *SEPTA*, 235 F.3d at 822.

## II.    The Court Should Enter the Consent Decree Because it is Fair, Reasonable, and Consistent with CERCLA

Under this deferential standard, the Court should conclude that the proposed Consent Decree is fair, reasonable, and consistent with the goals of the CERCLA.

16

A. <u>The Consent Decree Is Fair.</u>

A settlement is fair if it is both procedurally and substantively fair. *Tutu*, 326 F.3d at 207. "Procedural fairness considers the openness, candor, and bargaining balance of the settlement process," with a particular eye to whether the settlement involved "informed, arm's length bargaining." *Kramer*, 19 F. Supp. at 283-84. A settlement is substantively fair if it embraces the "concepts of corrective justice and accountability" by requiring the legally responsible parties to bear the cost of the harm. *Cannons*, 899 F.2d at 87.

The Decree is procedurally and substantively fair. It is procedurally fair because negotiations were arms-length, and each side was represented by experienced counsel. Where, as here, a proposed consent decree is "the product of good faith, arms-length negotiations, it is 'presumptively valid.'" *United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990); *see also Cannons*, 720 F. Supp. at 1035 ("The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency 'specially equipped, trained or oriented in the field' . . . EPA is such an agency.") (internal citation omitted).

The Decree is also substantively fair. "Courts have routinely recognized the important policy considerations served by so-called 'ability-to-pay' settlements." *Coeur d'Alenes*, 767 F.3d at 875. Here, the United States hired a financial expert

17

to evaluate what CDE could afford to pay.  As described in more detail in his declaration, Mr. Dan Leistra-Jones examined CDE's finances.[44]  He found that the payment required by the Decree and the related New Bedford Harbor Supplemental Decree is reasonable.[45]  By requiring CDE to pay what it can afford, the Decree is fair.  Requiring CDE to pay more would be neither fair nor reasonable, especially in light of CERCLA's recognition of ATP as an appropriate consideration when settling.  *See* 42 U.S.C. §§ 9622(e)(3)(A), 9622(f)(6)(B).

   B.  The Consent Decree Is Reasonable.

   The reasonableness inquiry is pragmatic and does not require precise calculations.  *Kramer*, 19 F. Supp. 2d at 286-87.  Instead, the court examines the likely effectiveness of the settlement to cleanse and protect the environment, whether the public is adequately compensated, and the risks and delays inherent in continuing the litigation.  *Cannons*, 899 F.2d at 89-90.

   Settlement is especially reasonable where, as here, continued litigation would simply deplete the funds that defendant could pay, ensuring nothing more than a Pyrrhic victory.  *See Bay Area Battery*, 895 F. Supp. at 1534 ("Though the Government could likely obtain a judgment against these parties, the costs of litigating and levying against the parties would likely outstrip the ultimate

---

[44] *See* Ex. 6 at ¶¶2,4, 5, 6, 7 (Leistra-Jones Decl.).

[45] *See id.* at ¶¶8-10 (Leistra-Jones Decl.).

recovery.  By settling with these PRPs now, the Government insures what little money the settlors have to contribute will be used to clean up the environment rather than pay attorneys."); *United States v. Vertac Chem. Corp.*, 756 F. Supp. 1215, 1219 (E.D. Ark. 1991) (approving CERCLA consent decree where "settlement represents a recovery of the maximum possible amount of money obtainable from [Settling Defendants] given their net worth and their limited ability to pay.").  "It is emphatically not reasonable to continue litigation against a party that lacks the ability to pay as this would only serve to further deplete precious financial resources that could otherwise be put towards immediate response efforts."  *IMC Eastern Corp.*, 2022 WL 4134321, at *8.

Here, because the proposed settlement with CDE represents what it can afford to pay, and litigating to judgment would likely only result in a smaller payment or no payment at all, the Decree is reasonable.  In addition, the United States is able to pursue the rest of its costs from TETCO, leaving open the possibility of a full recovery of its costs.

C.  The Consent Decree Advances the Objectives of CERCLA

CERCLA was enacted to "ensure the cleanup of the nation's hazardous waste sites." *Tutu*, 326 F.3d at 206.  "CERCLA encourages prompt and effective cleanup by responsible parties, while preserving both public finances and public health." *Kramer*, 19 F. Supp. 2d at 289.  "Whenever practicable and in the public

19

interest ... [the United States] shall act to facilitate agreements . . . in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a). By resolving CDE's liability for the amount it is able to pay, the Decree satisfies three CERCLA purposes: making responsible parties pay their share of costs, accounting for parties' ability to pay, and minimizing litigation and transaction costs through settlements.  *See United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 689 (D.N.J. 1989); *Bay Area Battery*, 895, F. Supp. at 1535).

## III.    TETCO's Public Comment Does Not Demonstrate that the Decree is Unfair, Unreasonable, or Inconsistent with CERCLA

The United States received one set of public comments from TETCO, a pipeline company that is the current Site owner and a PRP under CERCLA.  *See* Ex. 2.  The State received a similar comment from TETCO during New Jersey's separate public comment period.  *See* Ex. 3.  The United States' financial analyst reviewed TETCO's comments and his conclusion that the proposed CDE settlement is reasonable in light of CDE's limited ATP remains the same.[46]  The United States has carefully considered TETCO's submission and addressed each comment in detail in the Responsiveness Summary attached hereto as Exhibit 1. As set forth more fully in the Responsiveness Summary, none of the comments discloses facts or considerations indicating that the proposed Decree is

---

[46] *See* Ex. 6 at ¶¶ 25-29 (Leistra-Jones Decl.).

inappropriate, improper or inadequate.  Although the Responsiveness Summary addresses the comments thoroughly, to assist the Court, we summarize our responses here. [47]

1.    TETCO comments that it is not liable under CERCLA because it is an "innocent purchaser," that CDE is the sole cause of PCB contamination at the Woodbrook Site, and TETCO has nonetheless cooperated with EPA by incurring itself "in excess of $8 million in costs" related to the Woodbrook Site.[48]  The United States does not dispute that TETCO currently owns the majority of the Site. Nor does the United States dispute that TETCO has incurred $8 million related to the Site.  Whether TETCO is an innocent landowner is irrelevant to the matter of whether the proposed ATP settlement with CDE is fair, reasonable, and consistent with CERCLA, which is the relevant standard for entry of the proposed Supplemental Decree.  TETCO presupposes that it is an "innocent landowner" under CERCLA.  In general, "Section 107(a)(1) of CERLCA imposes liability on current owners of a site even if the disposal of the substances occurred before the commencement of ownership and the owner has not been shown to have caused a

---

[47] Using as a roadmap for its public comments the Court's standard for entry of a proposed settlement (i.e., whether it is fair, reasonable, and consistent with CERCLA), TETCO sometimes raises the same particular comment multiple times by asserting sequentially that it shows that the settlement is unfair, unreasonable, and also inconsistent with CERCLA.  Because this is how TETCO presents its arguments, this Memorandum of Law follows that structure in responding, though with truncated responses so as not to repeat verbatim any prior response.

[48] Exhibit 2 at 4.

release." *See United States v. Manzo*, 182 F. Supp. 2d 385, 397 (D.N.J. 2000) (citations omitted). The United States disputes that TETCO is an "innocent landowner" under CERCLA (42 U.S.C. § 9601(35) and 42 U.S.C. § 9607(b)(3)), but of course TETCO is free to assert such a defense at such time as the United States sues it under CERCLA for cleanup costs. In any such litigation, TETCO will bear the burden to establish the elements of any defenses it would invoke under CERCLA. As for TETCO's claim that CDE is responsible for all PCB contamination at the Site, CDE for its part disputes this, raising various defenses to liability.[49]

2.      TETCO questions CDE's status as ATP party, asserting that the United States should have applied 100% responsibility for the Woodbrook Site's contamination to CDE in assessing its ATP.[50] To respond, the United States carefully evaluated CDE's ATP and retained the assistance of an independent financial expert to assess the financial information that CDE submitted to substantiate its claim. As Mr. Leistra-Jones states in the attached Declaration, review of the company's financial documentation did not reveal suspicious transactions reflecting fraudulent business practices or other veil-piercing ground.[51]

---

[49] *See generally* Ex. 9 (CDE Letter).

[50] *See* Ex. 2 at 4-6.

[51] *See* Ex. 6 at ¶¶8-10, 26 (Leistra-Jones Decl.).

The United States' expert confirmed CDE's limited ATP.[52]  Using this analysis, the United States determined that the proposed settlement amount with CDE represented an appropriate and fair ATP settlement.  The type of analysis performed by this expert has formed the basis for numerous ATP settlements approved by courts.  *See Coeur d'Alenes*, 767 F.3d at 878; *Bay Area Battery*, 895 F. Supp at 1529-32; *Vertac Chem. Corp.*, 756 F. Supp. at 1219.

Further, undertaking an analysis of CDE's liability as compared to TETCO would serve no purpose because of CDE's limited ability to pay.  *See Coeur d'Alenes*, 767 F.3d at 878 (finding that, in an ability-to-pay case, there is "no reason for the district court to spend its time quantifying precisely how disproportionately [the objecting responsible party] may be held liable."); *IMC Eastern Corp.*, 2022 WL 4134321, at *7 ("Further, under the 'ability to pay' approach, the parties need not analyze comparative fault in order for the Proposed Consent to be substantively fair.") (internal citation omitted).  Finally, TETCO's assertion that certain public statements by CDE in news reports and in a YouTube video (discussing plans for the company to grow) demonstrate that CDE is not, in fact, an ATP party, are unfounded.[53]  It is reasonable to assume that every business

---

[52] *See* Ex. 6 at ¶¶8-10 (Leistra-Jones Decl.).

[53] *See* Ex. 2 at 5-6.

plans to improve its finances; no ATP settlements would be possible if such aspirations were charged against the settling parties.

3.      TETCO argues that without a final remedial selection by EPA to complete the Woodbrook Site's cleanup, there is no way to compare the $4 million figure in the Woodbrook settlement to the full costs that the public will bear to complete the remediation, which renders the settlement (in TETCO's opinion) inadequate.[54]  TETCO is wrong.  Once again, TETCO presupposes that it is not liable under CERCLA; the United States may sue TETCO in the future and the possibility remains that it TETCO will be liable for Site cleanup costs.  Further, once again, the settlement with CDE is based on its ATP, not what it should be if CDE had the same financial resources as TETCO.  It is not unusual for the United States to settle on an ability-to-pay basis with an eligible party under CERCLA without knowing the complete picture of a particular site's cleanup.  As one court has explained in approving a CERCLA settlement based on ability to pay, "incomplete information, muddled records, and rough approximations of responsibility are the norm [in] CERCLA litigation . . . . Such difficulties, however, will not preclude a court from entering a consent decree."  *United States v. Brook Village Assoc.,* 2006 WL 3227769 (D.R.I. Nov. 06, 2006), at *9. Otherwise, it would "disserve a principal end of the statute—achievement of

---

[54] *See* Ex. 2 at 7-10.

prompt settlement and a concomitant head start on response activities—to leave matters in limbo until more precise information was amassed." *Cannons*, 899 F.2d at 88.

4.      According to TETCO, the United States is "complicit" in providing a windfall to CDE, the United States has settled "solely for the benefit of obtaining additional funding for the New Bedford Harbor Site,"[55] and CDE has paid "nothing"[56] to reimburse the Woodbrook Site.  These comments are not well taken. Where, as here, a proposed consent decree is "the product of good faith, arms-length negotiations," it is "presumptively valid," *Oregon*, 913 F.2d at 581 (9th Cir. 1990) (citation omitted), and "[t]he presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency 'specially equipped, trained or oriented in the field,'" such as EPA.  *Cannons*, 720 F. Supp. at 1035.  As discussed above, CDE's payment is based on an analysis of its ability to pay; no "windfall" is at play.  TETCO again presupposes that CDE is "the only entity responsible for contamination at the Woodbrook Site."[57]  But the United States may sue TETCO later under CERCLA for remaining cleanup costs at the

---

[55]  Ex. 2 at 9.

[56]  Ex. 2 at 10.

[57]  Ex. 2 at 10.

Woodbrook Site. Further, CDE's agreement to pay $4 million toward the Woodbrook Site's cleanup and restoration is hardly "nothing," as TETCO claims. Finally, with respect to TETCO's assertion that the total recovery from CDE should not have been divided equally between the Woodbrook Site and the New Bedford Harbor Site, when properly considering the context, splitting the CDE settlement proceeds evenly is hardly arbitrary and a sign of bad faith.[58] The Court should defer to the United States' expertise and experience in making this determination. *See SEPTA*, 235 F.3d at 822 (finding that the "the district court owes deference to EPA's expertise" in crafting environmental settlements").

5. TETCO asserts that the settlement is unfair because the United States has not shared CDE's underlying financial and insurance information with TETCO and the public for inspection.[59] To respond, TETCO's counsel already possesses the insurance information that the United States reviewed for purposes of this settlement. TETCO has had access to this information for nearly a decade. In 2013, in response to a Freedom of Information Act request, EPA provided to the same law firm representing TETCO here, which was formerly known as Wolff & Sampson PC (now Chiesa Shahinian & Giantomasi PC), copies of "any and all

---

[58] As discussed previously, the United States did not act arbitrarily by splitting the CDE settlement evenly between the Woodbrook and the New Bedford Harbor sites, but rather, diligently considered the relevant factors affecting each site (including potential litigation risk, health effects, and total costs) in determining how to allocate the settlement proceeds. *See* Ex. 7 at ¶¶ 3-9 (Northridge Decl.).

[59] *See* Ex. 2 at 4-5.

insurance policies and other insurance policy documents evidencing insurance coverage identifying Cornell-Dubilier Electronics, Inc. as an insured."[60]  With regard to CDE's financial documents (separate from insurance policies), the United States is not obligated to produce such information to TETCO.  *See, e.g., United States v. Kramer*, 19 F. Supp. 2d 273 (D.N.J. 1998) (discovery unnecessary to determining the fairness of the settlement).  Likewise, the United States is not required to air the details of the settlor's finances.  *United States v. Davis*, 261 F.3d 1, 23-24 (1st Cir. 2001); *United States v. Hecla Ltd.*, 2011 WL 3962227, at *5 (D. Idaho Sep. 8, 2011).  Further, because CDE has asserted that its financial records are protected as confidential business information, the United States is obligated to ensure the confidentiality of this information unless otherwise authorized by the law.  *See* 18 U.S.C. § 1905.  The attached declaration that the United States has provided from its financial expert provides an acceptable basis for the proposed settlement.  *See Coeur d'Alenes*, 767 F.3d at 878; *Bay Area Battery*, 895 F. Supp. at 1529-32; *Vertac Chem. Corp.*, 756 F. Supp. at 1219; *see also IMC Eastern Corp.*, 2022 WL  4134321, at *8 ("Reliance on these types of records and an expert's interpretation thereof comports with the flexibility afforded to the

---

[60] *See* Ex. 8 (Letter from Sarah P. Flanagan, Assistant Regional Counsel, EPA Region 2, to Keith Morris, Esq., dated March 18, 2013, in response to Freedom of Information Act request).

government in crafting settlements with PRPs that will best serve the public interest.").

6.      TETCO comments that, because CDE "retains the right to dissolve" under the proposed settlement, the Consent Decree must not comport with EPA's published ATP guidance, as ATP settlements are meant to apply outside of the bankruptcy context.[61]  The United States agrees that ATP settlements are meant to apply outside of the bankruptcy context; the point of an ATP settlement is to enable the settlor to avoid a bankruptcy by agreeing to pay what it can and not necessarily what it owes.  TETCO appears to misunderstand the proposed Decree.  The Decree obligates CDE to pay any remaining insurance proceeds that it possesses in the event that it decides to voluntarily dissolve to the United States, State of New Jersey, and Commonwealth of Massachusetts to apply evenly toward the Woodbrook and New Bedford Harbor Sites.  *See* Decree ¶ 6 (ECF No. 2-1).  Dissolution is separate from bankruptcy.  *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 126 (3d Cir. 2004) (noting that dissolution "is not an objective that can be obtained in bankruptcy").  The United States cannot control, through a settlement resolving CERCLA liability, whether and when a company decides to declare bankruptcy or to dissolve under state law.

7.      According to TETCO, the proposed Decree is substantively

---

[61]  Ex. 2 at 5.

unfair because it is not based on a measure of comparative fault.[62]  TETCO is

wrong.  The proposed settlement with CDE is not based on a calculation of the

total amount that CDE owes, but rather, what it can afford to pay.  Because the

proposed settlements are based on ability to pay, there is no need to calculate how

much CDE would have paid if it had the resources TETCO does.  *See Coeur*

*d'Alenes*, 767 F.3d at 878 ("no reason for the district court to spend its time

quantifying precisely how disproportionately [the objecting responsible party] may

be held liable."); *IMC Eastern Corp.*, 2022 WL 4134321, at *7 ("Further, under

the 'ability to pay' approach, the parties need not analyze comparative fault in

order for the Proposed Consent Decree to be substantively fair.") (internal citation

omitted).

  8. TETCO asserts that the Woodbrook settlement is unreasonable

because it doesn't cleanse the environment; without having EPA's final selected

cleanup remedy yet for Woodbrook and knowing the scope of anticipated costs,

TETCO asserts that the technical adequacy of the settlement cannot be assessed.[63]

TETCO is wrong.  Again, "CERCLA contemplates and expressly authorizes

ability to pay settlements."  *IMC Eastern Corp.*, 2022 WL 4134321, at *7.  As one

court has explained in approving a CERCLA settlement based on ATP,

---

[62]  *See* Ex. 2 at 6.

[63]  *See* Ex. 2 at 7.

"incomplete information, muddled records, and rough approximations of responsibility are the norm [in] CERCLA litigation . . . . Such difficulties, however, will not preclude a court from entering a consent decree." *Brook Village,* 2006 WL 3227769, at *9. Otherwise, it would "disserve a principal end of the statute—achievement of prompt settlement and a concomitant head start on response activities—to leave matters in limbo until more precise information was amassed." *Cannons*, 899 F.2d at 88.

9. TETCO argues that the settlement creates an "orphan share"[64] that is unfair because CDE escapes liability while "Gore Factors"[65] point to a full recovery from CDE in an "equitable allocation" scenario.[66] But CDE is not escaping liability; it is paying what it can afford as a party with limited ATP. Equitable considerations such as "Gore Factors" and "orphan shares" are not relevant to the proposed settlements with CDE, which are based on ability to pay.

---

[64] "Orphan share" generally refers to the concept in a contribution action brought by a PRP that an equitable allocation among PRPs "may take into account the need to increase the ideal allocation of a party to reflect the inability of other entities, known and unknown, to pay a full share, and the inability to ascribe some portion of the wastes to any known entity, all to be considered by the court before fixing the responsible party's actual share." *United States v. Kramer*, 953 F. Supp. 592, 595 (D.N.J. 1997).

[65] In 1980, Congress failed to adopt a proposed CERCLA amendment offered by then-Representative Albert Gore that would have created a precise list of factors to be considered in a contribution action brought by a PRP against one more PRPs in apportioning CERCLA response costs. *See Kramer*, 953 F. Supp. at 598. "Nonetheless, courts have often applied or referred to the 'Gore factors' as a non-exhaustive list of considerations" when allocating CERCLA response costs in PRP's contribution action against other PRPs. *See id.*

[66] Ex. 3 at 8.

Equitable factors, such as Gore Factors and orphan shares, "only are considered during a contribution action" under CERCLA Section 113, 42 U.S.C. § 9613, which involves a claim by a PRP against another PRP to recoup costs. *United States v. Compaction Systems Corp.*, 88 F. Supp. 2d 339, 355 (D.N.J. 1999). In contrast, this action, arising under CERCLA Section 107, 42 U.S.C. § 9607, is a Government enforcement action, not a contribution action. Ultimately, TETCO's concern is that it may be asked to pay more than it believes to be its fair share at the Woodbrook Site. What burden the company will ultimately bear remains unknown. If TETCO ultimately pays more than its share, then this is a policy choice that Congress has made: "Disproportionate liability, a technique which promotes early settlements and deters litigation for litigation's sake, is an integral part of the statutory plan." *Cannons*, 899 F.2d at 91-92; *see Coeur d'Alenes*, 767 F.3d at 878.

10.    TETCO claims that the Woodbrook Decree is flawed because a portion of the settlement proceeds will go toward restoring natural resource damages at the Site; TETCO claims that there are no natural resource damages that the United States can recover at the Site.[67]  TETCO is wrong.  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the federal government and the states, in their capacity as trustees for natural resources within their jurisdictions, to recover

---

[67] *See id.*

"damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss . . ."  42 U.S.C. § 9607(a)(4)(C).  Natural resources are broadly defined to include: "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States [or] any State . . ."  42 U.S.C. § 9601(16).  Here, natural resources have been injured or lost as a result of widespread releases of PCBs at the Woodbrook Site.  Elevated PCB concentrations were discovered in two dumping areas at the Site: the Eastern and Western Dump.[68]  The highest levels of PCB contamination are located in soil within the Western Dump.[69]  It has been established that PCB exposure at the levels found at the Woodbrook Site causes injuries to a broad range of natural resources.[70]  The amount of natural

---

[68] *See* Woodbrook Site EPA ROD at pages 7-8, located at https://semspub.epa.gov/work/02/692666.pdf.

[69] *See id.*

[70]  *See generally* DD MacDonald, CG Ingersoll, and TA Berger, Development and Evaluation of Consensus-Based Sediment Quality Guidelines for Freshwater Ecosystems: Archives of Environmental Contamination and Toxicology [Arch. Environ. Contam. Toxicol.], vol. 39, no. 1, pp. 20-31, Jul 2000; Heaton SN, Bursian SJ, Giesy JP, Tillitt DE, Render JA, Jones PD, Verbrugge DA, Kubiak TJ, Aulerich RJ, Dietary exposure of mink to carp from Saginaw Bay, Michigan. 1. Effects on reproduction and survival, and the potential risks to wild mink populations. Arch Environ Contam Toxicol. 1995 Apr;28(3):334-43. doi: 10.1007/BF00213111. PMID: 7726645.

resource damages that CDE will pay under the Woodbrook Decree is based on

DOI's assessment. [71]

11.    TETCO erroneously contends that the settlement is unfair because

CDE did not cooperate in good faith with the United States and New Jersey by

participating in prior cleanup activities at the Woodbrook Site.  But CDE in fact

has cooperated with the United States by agreeing now to pay the maximum

amount that it can afford to resolve its liabilities at both the Woodbrook and New

Bedford Harbor sites.  TETCO's comment presupposes that CDE either had or

currently has the financial ability to pay all past and future response costs at the

Woodbrook Site.  The United States' analysis of CDE's finances establishes that it

does not have that ability.  The fact that TETCO has not, itself, pursued CDE for

contribution suggests an awareness of this.[72]

12.    TETCO asserts that the settlement is unreasonable because the United

States lodged the proposed Decree on the same day as filing the Complaint;

according to TETCO, because CDE has not responded to the Complaint there is no

---

[71] Even if DOI had not performed any damage assessment at this time, the Trustees may nonetheless determine that it is appropriate to accept a cash settlement from a CERCLA defendant based on incomplete information.  *See Davis*, 261 F.3d at 24 ("data on the total extent of harm and the respective liabilities of various PRPs are often unavailable. Such difficulties will not preclude a court from entering a consent decree.") (citations omitted).

[72] Perhaps TETCO's decision was based on its recognition that CDE likely had limited ability to pay.  *See* Consent Decree, Section I, Paragraph L ("Based upon this Financial Information and Insurance Information, the United States has determined that CDE has limited financial ability to pay for response costs incurred and to be incurred and Natural Resources Damages at the Site."), entered on Oct. 2, 2014, Case No. 2:12-cv-05407-JLL-MAH (D.N.J.) (Linares, J.).

way to assess the relative strength of the parties' litigation positions.[73]  This

argument is baseless.  District courts across the country, including this Court, are

familiar with this routine practice by the United States in environmental

settlements that have been approved by courts, including CERCLA ability-to-pay

cash settlements.[74]  It would frustrate judicial economy and CERCLA to require

the parties to lodge a settlement only after requiring the settling defendant to

answer the complaint, conduct discovery, and to otherwise engage in pretrial

activity.  As the Third Circuit noted in *Occidental Chemical*, Section 122 of

CERCLA "expressly provides that 'whenever practicable and in the public interest

. . . [EPA] shall act to facilitate agreements ... in order to expedite effective

remedial actions and minimize litigation.'"  200 F.3d at 147.  Filing the complaint

simultaneously with the proposed Decree furthers this goal because, if the

settlement is approved by the Court, it would lead to prompt resolution of this

matter without imposing the burden and expense of protracted litigation.

---

[73]  *See* Ex. 2 at 9.

[74] *See, e.g.*, ECF Nos. 1 and 2, *United States v. Unimatic Manufacturing Corp.*, Case No. 2:20-cv-17284 (D.N.J.) (United States filed CERCLA complaint and proposed consent decree resolving claims on an ability-to-pay basis simultaneously on the same day); ECF Nos. 1 and 3, *United States v. Fischer Scientific Co.*, Case No. 2:20-cv-135 (United States filed CERCLA complaint and proposed consent decree on same day); ECF Nos. 1 and 2, *United States v. Kaydon Acquisition Xi, Inc.*, Case No. 2:22-cv-3759 (D.N.J.) (same); *United States v. Ford Motor Co.*, Case No. 2:19-cv-12157 (D.N.J.) (same); ECF No. 1, *United States v. Cornell-Dubilier Electronics, Inc.*, Case No. 2:12-cv-5407 (D.N.J.) (United States filed CERCLA complaint and proposed consent decree resolving claims on an ability-to-pay basis simultaneously on the same day).

13.    TETCO contends that the settlement is inconsistent with the goals of CERCLA because CDE is not paying its fair share.[75]  This comment has been addressed previously.  In a nutshell, TETCO is incorrect because CERCLA "expressly authorizes ability to pay settlements" and encourages agreements rather than litigation.  *See IMC Eastern Corp.*, 2022 WL 4134321, at *7; *Occidental Chemical*, 200 F.3d at 147.

14.    TETCO asserts that the settlement is inconsistent with CERCLA because there is no public information available to assess whether CDE can pay its fair share.[76]  TETCO is incorrect.  As discussed previously, the United States is not obligated to disclose its formula for determining a settlement amount or air the details of the settlor's finances.  The United States has provided a declaration from its financial expert who evaluated CDE's ability to pay based on relevant financial documentation.  This declaration describes the process, based on EPA's public guidance for ATP settlements, and the opinions that our expert has formed based on his review of the relevant information.  Regarding CDE's insurance documents, TETCO has had access to this information for nearly a decade.  In 2013, in response to a Freedom of Information Act request, EPA provided to the same law firm representing TETCO here, which was formerly known as Wolff & Sampson

---

[75]  *See* Ex. 2 at 11.

[76]  *See* Ex. 2 at 11.

PC (now Chiesa Shahinian & Giantomasi PC), copies of "any and all insurance policies and other insurance policy documents evidencing insurance coverage identifying Cornell-Dubilier Electronics, Inc. as an insured."[77]  TETCO has been afforded an opportunity to comment publically on the proposed Decree in accordance with Department of Justice policy (28 C.F.R. § 50.7) and CERCLA (42 U.S.C. § 9622(d)(2)).  The proposed Decree is ripe for the Court's decision without requiring the United States and CDE to provide discovery to TETCO, which thwarts CERCLA's preference for settlements to minimize litigation.  *Occidental Chemical*, 200 F.3d at 147.

15.    TETCO baselessly claims that the CDE settlement is inconsistent with CERCLA because "the New Bedford parties" are receiving a "windfall."[78]  As discussed, the United States' unreimbursed response costs at New Bedford Harbor total over $400 million.  It is illogical to suggest the New Bedford Harbor Site is somehow unjustly enriched by received $4 million in the CDE settlement.  As the Responsiveness Summary describes in further detail, the United States thoughtfully considered how best to divide the CDE settlement proceeds, taking into account litigation risk, the amount of costs incurred by the United States to

---

[77] *See* Ex. 8 (Letter from Sarah P. Flanagan, Assistant Regional Counsel, EPA Region 2, to Keith Morris, Esq., dated March 18, 2013, in response to Freedom of Information Act request).

[78] Ex. 2 at 11.

date at each site, and other factors.[79]  The United States did not act arbitrarily by splitting the CDE settlement evenly between the Woodbrook and the New Bedford Harbor sites, but rather, diligently applied EPA's expertise in crafting environmental settlements.  *See SEPTA*, 235 F.3d at 822 (finding that the "the district court owes deference to EPA's expertise").

16.     Finally, TETCO incorrectly claims that the proposed Decree contravenes CERCLA because the settlement allows CDE to settle on a reduced basis that works "to the detriment of the public and TETCO."[80]  To the contrary: consistent with CERCLA, CDE is paying what it can afford toward the cleanup of two Superfund sites.  The public is not harmed because CDE is paying what it can afford to facilitate the cleanup of two Superfund sites.  The United States and State of New Jersey can still sue TETCO, the current owner of Woodbrook, for the remaining Site cleanup costs.  Nor are TETCO's interests harmed; TETCO is free to raise its "innocent landowner" and any other defense it believes applies to the extent the United States sues TETCO under CERCLA in a future litigation.

## CONCLUSION

For the foregoing reasons, the Court should enter the proposed Decree. There is a signature line for the Court on page 24 at ECF No. 2-1, PageID: 48.

---

[79]   See Ex. 7 at ¶¶ 3-9 (Northridge Decl.).

[80]   Ex. 2 at 12.

Respectfully submitted,

*FOR THE UNITED STATES OF AMERICA*

ELLEN M. MAHAN
Deputy Section Chief


<u>March 3, 2023</u>                    */s Patrick B. Bryan*
Date                                PATRICK B. BRYAN
                                    Senior Attorney
                                    Environmental Enforcement Section
                                    Environment and Natural Resources Division
                                    United States Department of Justice
                                    P.O. Box 7611, Ben Franklin Station
                                    Washington, DC 20044-7611
                                    (202) 616-8299
                                    patrick.bryan@usdoj.gov

                                    PHILIP R. SELLINGER
                                    United States Attorney
                                    District of New Jersey

                                    J. ANDREW RUYMANN
                                    Assistant United States Attorney
                                    Chief, Civil Division
                                    U.S. Attorney's Office, District of New Jersey
                                    402 East State Street, Room 430
                                    Trenton, New Jersey 08608
                                    Phone: (609) 989-0563

OF COUNSEL:
DEBORAH SCHWENK
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY  10007

*FOR THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND*

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625-0093

March 3, 2023              */s Thomas Lihan*
Date                       THOMAS LIHAN
                           Deputy Attorney General

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on March 3, 2023, I electronically filed the foregoing *Memorandum in Support of Consented-To Motion to Enter Consent Decree* using the Court's CM/ECF system, which will send a notice of such filing to all counsel of record, and also served copies of same by e-mail upon the attorneys listed below.

*For the State of New Jersey*

Thomas Lihan, Esq.
Andrew Verdone, Esq.
Deputy Attorney Generals
New Jersey Department of Law and Public Safety
Division of Law
Environmental Enforcement and Environmental Justice
25 Market Street, P.O. Box 093
Trenton, NJ 08625
609-376-2740
Thomas.Lihan@law.njoag.gov
Andrew.Verdone@law.njoag.gov

*For Cornell Dubilier Electronics, Inc.*

Thomas E. Redburn, Jr., Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
212-419-5899
tredburn@lowenstein.com

Jonathan Ettinger, Esq.
Euripides Dalmanieras, Esq.
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
617-832-1195 (Ettinger)
617-832-3006 (Dalmanieras)
JEttinger@foleyhoag.com
EDalmani@foleyhoag.com